93pp

FILED VIA MAIL

NOV 17 2026

CLERK, U.S. BANKRUPTCY
ORLANDO DIVISION

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re:
Benjamin Tyler Poore-Barnes,
Debtor.
______________________________________/

Case No. 6:26-bk-02440-LVV
Chapter 7

James Michael O'Hara,
Plaintiff,
v.
Benjamin Tyler Poore-Barnes,
Defendant.
______________________________________/

Adv. Pro. No. 6:26-ap-00111-LVV

**PLAINTIFF'S NOTICE OF FILING CERTIFIED TRANSCRIPTS OF THE MEETINGS OF CREDITORS AND OF CORRECTIONS TO THE COMPLAINT**

Plaintiff, James Michael O'Hara, pro se, gives notice of the following.

1. **Certified transcripts.** Attached are the certified transcripts of the meetings of creditors held under 11 U.S.C. § 341 in Case No. 6:26-bk-02440-LVV on May 15, 2026 (Attachment A, pages 1–28) and May 29, 2026 (Attachment B, pages 1–18). Accredited Court Reporters prepared them from sound recordings obtained from the Office of the United States Trustee. The reporter's certificates are at page 28 of Attachment A and page 18 of Attachment B; the reporter's word indexes are omitted. The Complaint (Doc. No. 1) reserved these transcripts as Exhibit 24 and stated that they would be filed upon receipt (¶ 39B; Doc. No. 1 at 55). Plaintiff received them after the Complaint was filed and identified them in the initial disclosures he served on August 5, 2026.

2. **The certified text controls.** The Complaint quoted the Defendant's May 15 testimony from a transcript generated by speech-recognition software (Exhibit 29), which paragraph 39B said was cited "for reference purposes only." The Complaint's "transcript" citations are to time stamps in Exhibit 29, not to pages and lines of the certified transcripts. Where the Complaint, or any other paper Plaintiff has filed, quotes or describes the testimony at either meeting differently from the certified transcripts, Plaintiff relies on the certified transcripts. Citations below are to the certified transcripts by page and line.

3. **Corrections.** Plaintiff corrects the following statements in the Complaint about the Defendant's testimony.

(a) Paragraph 40 states that the Defendant testified on May 15 that his wife's income "is never" part of his household income. That quotation came from the reference transcript, and it is wrong. The certified transcript reads (Attachment A at 22:7–14):

Q So your wife's income, is that part of your household income?
A It is, and every — everything was provided, all the documents provided.
Q Okay. But your wife -- was it Dracaena, if I've said that correctly, that's not currently getting any income; is that correct?
A Not at the moment.

Plaintiff withdraws the statements in paragraph 40 that the Defendant testified that his wife's income "is never," or is not, part of his household income.

(b) Paragraph 26 states that the Defendant testified on May 15 that he "had sufficient funds to pay the Settlement Agreement at the time he signed it." Paragraph 74 states that he testified that he had the money "but chose not to pay," and paragraph 75 states that his testimony "confirms he had funds at settlement signing." None of these statements matches the certified transcript, which reads (Attachment A at 21:3–15; the question begins at 20:23):

[Q] At the time, which funds were actually available to you to make those payments, and what happened to those funds?
A The business was struggling before that, and we intended to pay everything but we just failed.
Q So when you signed the agreement, you had funds, but after you signed the agreement, you did not have funds; is that correct?
A I did not have $25,000. I think you agreed to a thousand a month, which was doable, but the business was suffering and couldn't pay.
Q So you actually paid none of that, correct?
A No, it was not paid, no.

Plaintiff withdraws those statements as descriptions of the Defendant's testimony. Paragraphs 26 and 27 also describe the Defendant as blaming a decline in his business after he signed the agreement. He testified that the business "was struggling before that" and "was suffering and couldn't pay"; he did not say that the decline came after he signed, and he did not name the business in this exchange (earlier in the meeting he had named Beyondscapes LLC as the business whose failure caused him to file, Attachment A at 10:6–12). Plaintiff withdraws that description as well. Paragraphs 26, 27, 74 and 75 are to be read with the certified text.

(c) Paragraph 39E states that the Defendant conceded on May 29 that his wife handled "a lot of emails" for BeyondScapes. Those words were spoken by the creditor who was questioning him, Sharon Ellis. The certified transcript reads (Attachment B at 12:23–13:2):

Q But she did — she was a contact? She did --
A She did handle some emails.
Q I'm sorry?
A She would handle some emails.
Q Okay. A lot of emails.

Plaintiff withdraws the statement that the Defendant said "a lot of emails." Paragraph 39E also says that the Defendant "had minimized his wife's involvement" at the May 15 meeting. The May 15 transcript contains no question or answer about his wife's involvement in BeyondScapes; it was Ms. Ellis who said, in her question on May 29, that he had said at the last meeting that his wife "had no involvement with Beyondscapes" (Attachment B at 12:15–17). Plaintiff withdraws that statement as well.

4. **Other wording.** Four other passages are noted. Paragraph 39 says the Defendant was asked what "drove the timing" of his bankruptcy filing; the question was "what caused you to file for this bankruptcy?" (Attachment A at 10:6–7). The answer about COVID quoted in paragraph 39B was given to the question "What happened to Beyondscapes?" (Attachment A at 13:21–23). The answer quoted in paragraph 39E as "one to two years ago" was "Over a year or two ago. One to two years." (Attachment B at 10:15). Paragraphs 93 and 98 say the Defendant could not identify the account used for Progreen or recall "the financial institution or account number"; he answered that it was "a Novo account or something like that" and "might have been SoFi or Novo," and said he did not recall the last four digits (Attachment B at 10:4–19). Plaintiff will conform every quotation and description of the testimony to the certified transcripts in any amended complaint.

5. **Exhibit 10.** The Complaint states that Exhibit 10, a LexisNexis SmartLinx report, was not enclosed and was available for the Court's *in camera* review (¶ 22; Doc. No. 1 at 55). Because the report contains personal identifiers of persons who are not parties, Plaintiff withdraws Exhibit 10 as an exhibit to the Complaint and withdraws that offer. He will not file the report in unredacted form or submit it for *in camera* review, and any amended complaint will omit it. The allegations for which the Complaint cites Exhibit 10 are not withdrawn.

Dated: November 12, 2026

J Michael O'Hara

James Michael O'Hara, Plaintiff, pro se
19141 Sabal Street
Orlando, Florida 32833
407-608-2473 | pgadget@gmail.com

**CERTIFICATE OF SERVICE**

I, James Michael O'Hara, am the Plaintiff in this adversary proceeding and appear pro se. On November 12, 2026, I mailed this Notice, with Attachments A and B, to the Clerk of Court, George C. Young Federal Courthouse, 400 West Washington Street, Suite 5100, Orlando, Florida 32801, for filing. On the same date I served a true copy of this Notice and its attachments on counsel for the Defendant, Cole Branson, Esq., Branson Ainsworth, PLLC, 1501 E. Concord Street, Orlando, Florida 32803, by email to cole@bransonlaw.com with a copy to nataly@bransonlaw.com, the means to which he consented in writing (Fed. R. Civ. P. 5(b)(2)(E); Fed. R. Bankr. P. 7005). On the same date I sent a copy by email to the Office of the United States Trustee, 400 West Washington Street, Suite 1100, Orlando, Florida 32801, at ustp.region21.or.ecf@usdoj.gov (Fed. R. Bankr. P. 9034).

I declare under penalty of perjury that the foregoing Certificate of Service is true and correct (28 U.S.C. § 1746; Local Rule 9013-3(d)). Executed on November 12, 2026.

J Michael O'Hara

James Michael O'Hara, Plaintiff, pro se
19141 Sabal Street
Orlando, Florida 32833
407-608-2473 | pgadget@gmail.com

# ATTACHMENT A

Certified Transcript of the Meeting of Creditors (11 U.S.C. § 341)

Held May 15, 2026

In re Benjamin Tyler Poore-Barnes, Case No. 6:26-bk-02440-LVV

Prepared by Accredited Court Reporters

Pages 1–28

Reporter's certificate at page 28 (dated June 15, 2026)

Attached to Plaintiff's Notice of Filing Certified Transcripts of the Meetings of Creditors and of Corrections to the Complaint

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:26-bk-02440-LVV

IN RE:

BENJAMIN TYLER POORE-BARNES,

Debtor.

---

MAY 15, 2026

SECTION 341 MEETING OF CREDITORS

HELD VIA ZOOM/TELEPHONIC

A P P E A R A N C E S:

LORI PATTON, TRUSTEE
377 Maitland Avenue
Suite 1002
Altamonte Springs, Florida
Appearing as Chapter 7 Trustee

JEFFREY S. BADGLEY, ESQUIRE
Badgley Law Group
801 North Magnolia Avenue
Suite 304
Orlando, Florida

Proceedings recorded by electronic sound recording
Transcript provided by ACCREDITED COURT REPORTERS
acreporters@embarqmail.com
(407) 443-9289

APPEARANCES CONTINUED:

ILERAINE SALLOUM, PARALEGAL
Office of the United States Trustee
400 West Washington Street
Suite 1100
Orlando, Florida
Appearing on behalf of United States Trustee

ALSO PRESENT:

Sharon Ellis - Pro Se Creditor
Michael O'Hara - Pro Se Creditor

# I N D E X

TESTIMONY OF BENJAMIN TYLER POORE-BARNES:


| | |
|---|---|
| Examination by the Trustee | 7 |
| Examination by Ms. Salloum | 10 |
| Examination by Mr. O'Hara | 18 |
| Examination by Ms. Ellis | 23 |
| CERTIFICATE OF REPORTER: | 28 |
| WORD INDEX: | 29 |

P R O C E E D I N G S

THE TRUSTEE: Track 7 is Case Number 26-2440, Benjamin Tyler Poore-Barnes. And, appearance of counsel.

MR. BADGLEY: Jeff Badgley for Mr. Poore-Barnes.

THE TRUSTEE: Thank you.

And, sir, do you swear to tell the truth, the whole truth, and nothing but the truth? Mr. Barnes?

MR. BARNES: Yes. Yes, ma'am.

THE TRUSTEE: Thank you. Please state your name for the record.

MR. BARNES: Benjamin Tyler Barnes.

THE TRUSTEE: Okay. And so I have several other appearances here for this case. I'm going to start with the United States Trustee's Office.

MS. SALLOUM: Ileraine Salloum for the U.S. Trustee.

THE TRUSTEE: Thank you. And I see Mr. O'Hara. I know he's here for this case. He's not an attorney, but he is a pro se creditor.

Is there anybody else here for this case that wants to let me know you're here?

MS. ELLIS: Yes. Sharon Ellis.

THE TRUSTEE: Okay. And, Ms. Ellis, do you intend to ask questions of the Debtor?

MS. ELLIS: Yes. Yes, ma'am, I do.

THE TRUSTEE: Okay. So anybody else that's here for this case? Okay.

Mr. O'Hara and Ms. Ellis, I understand that neither of you are attorneys, and I understand that this is a new process for you. So I'm going to explain some background and some rules before we get started.

My job as the Trustee is to look and see if this bankruptcy case has any assets that I can use to collect to pay back creditors. That is the extent of my job and my role in this case.

This is my meeting. This is not free deposition time. Your questions that I'm going to allow you to ask of the Debtor will be limited to finding assets for the bankruptcy estate to pay creditors. We are not going to go into a big history of fraud or anything else or litigate whether he's a good person or a bad person. This conversation that I am controlling is limited to finding assets for the bankruptcy estate. Is that clear?

MS. ELLIS: Yes, ma'am.

MR. O'HARA: Yes, ma'am. May I ask a quick question on that?

THE TRUSTEE: Let me finish my spiel.

Ms. Salloum from the United States Trustee's Office is going to ask questions before I let you guys ask any questions, and she may hit some of the things that you are interested in hitting. So please pay attention to her questions, and if she has asked one that you were going to ask already, please do not ask it again. Okay?

MS. ELLIS: Yes, ma'am.

THE TRUSTEE: All right. Mr. O'Hara, very quickly, what is your question?

MR. O'HARA: My research, Trustee Patton, indicated that one of the functions of this meeting was to identify possible fraud. Is that not the case for today?

THE TRUSTEE: It may be, but we are limited because Ms. Salloum has to leave for another case at 10:30, and we'll see how long it goes. But that is not necessarily the purpose of a 341 Meeting. That is usually the purpose of what's called a deposition in bankruptcy cases, which is called a Rule 2004 Exam, and usually those are more appropriate for getting down into the nitty-gritty and grinding out fraud and everything else. Okay?

MR. O'HARA: Thank you, Trustee.

THE TRUSTEE: You're very welcome.

THEREUPON:

BENJAMIN TYLER POORE-BARNES

having been first duly sworn, was examined and testified as follows:

EXAMINATION

BY THE TRUSTEE:

Q All right. Mr. Barnes, I've already sworn you in.

When you filed your petition, did you read and understand everything before you signed it?

A Yes.

Q Does it list everything you own and everyone you owe money to?

A Yes.

Q Are there any changes or corrections you need to make at this time?

A Not currently, no.

Q Have you ever filed a bankruptcy before?

A Yes, 2014.

Q Are you required to pay child support or alimony to anyone?

A No.

Q Did you read and understand the bankruptcy information sheet that describes the different chapters

that are available before you filed your petition?

A Yes.

Q All right. Do you own any real estate?

A No, I do not.

Q When's the last time you owned real estate?

A Never owned real estate.

Q All right.

The personal property that you listed, is that a good list of everything you own and what you believe it's worth?

A Yes.

Q All right.

When I was looking, I also saw there's a vehicle history where you owned at one point a 2017 Chevy Colorado. What happened to it?

A Repossessed.

Q A 2015 Civic.

A Never owned a 2015 Civic.

Q Okay. A 2015 Ford Mustang.

A That was given back.

Q Okay. So that was a voluntary surrender?

A Yes.

Q Okay.

The personal property that you did list on your petition, is that a good list of everything you own and

what you believe it's worth?

A Yes, it is.

Q Okay.

In the year before you filed your petition, did you give away, sell, or transfer any property out of your name?

A No.

Q In the year before you filed your petition, did you repay any friend or family member money you owed to them?

A No.

Q Do you have the right to sue anyone right now for any reason?

A No.

Q Do you expect an inheritance in the future?

A No.

Q Are you working?

A Yes.

Q And is your employment information listed on your petition?

A Yes, it is.

Q And the taxes that I received, is that a good copy of what you filed with the IRS?

A Yes, it is.

THE TRUSTEE: Ms. Salloum, I'm going to let you

ask your questions.

MS. SALLOUM: Thank you, Ms. Patton, Trustee Patton.

EXAMINATION

BY MS. SALLOUM:

Q Mr. Barnes, briefly, very briefly, can you tell me what caused you to file for this bankruptcy?

A Business failure.

Q And that business is?

A Landscaping.

Q And the name of that landscape business?

A It was Beyondscapes LLC.

Q When did you purchase the 2017 Ford F-150, and is that your primary vehicle for transportation?

A I've never owned a 20 -- oh, the 2017 Ford F-150. That was purchased around November, and that's the only means of transportation.

Q What did you put down on the Ford F-150 when you purchased it, or did you trade in a vehicle?

A I didn't put anything down.

Q Did you trade in a vehicle?

A No.

Q Did you have an ownership interest in a 2013 Ram 1500 Tradesman?

A Yes, that was stolen from me.

Q When?
A 2013.
Q Did you have an ownership in a 20 -- or a 2003 Ford F-250?
A Yes.
Q What happened to that?
A That was repossessed.
Q When?
A 2015 or so, or '16. I can't recall by memory, but it was a long time ago.
Q And a 2004 Dodge Ram 1500?
A That was repossessed around 2021.
Q Schedule A/B lists a current business ownership a hundred percent yours in Progreen Outdoors Improvements LLC, and your statement of financial affairs lists both this business and your former business, Beyondscapes, as landscaping businesses.
Is there any difference in the product and service offerings between the two businesses or your business model between those two?
A No.
Q Where do you do your business banking for Progreen?
A SoFi Bank --
Q Where did you ---

A -- and Novo.
Q And where did you do your business banking for Beyondscapes?
A I believe that was maybe Bank of America. We switched banks a few times.
Q Is that account still open?
A No.
Q When did it close?
A I can't recall by memory. I don't have that paperwork in front of me.
Q Was it closed any time in the last year?
A It was closed way before last year.
Q Was it closed in the last two years?
A Yes.
Q Do you have any professional licenses?
A No.
Q Schedule I lists your wife's net income from the operation of her business, Dracaena. I don't know if I'm pronouncing that right.
What's the nature of that business, and where does she do her business banking?
A She works from home. I'm not sure where she does her banking at, but it's completely different than landscaping. It's like administrative work.
Q Doing what?

A Like an accounting-type of stuff, freelance.

Q Your Schedule I lists your --

A Project management.

Q Sorry?

A And project management.

Q Project management of construction projects?

A No. She does -- does like bookkeeping for people.

Q Schedule I lists your wages and employment with Watson Civil Construction, but it does not list any business net income from Progreen Outdoors Improvements. Why not?

A It's no longer active.

Q Progreen is no longer active?

A It's not doing any business, no.

Q When was the last time you had business?

A Three to four years ago.

Q You list a hundred percent interest in it, but you don't have -- it's not operating?

A It is not currently operating, no.

Q What happened to Beyondscapes?

A Beyondscapes just started failing after COVID, COVID-19.

Q Okay. Even with your wife's net income, you're supposed to attach business income, expenses and

receipts, or business income and expenses on an attachment for Schedule I and that wasn't done.

MS. SALLOUM: Do you know why, Mr. Badgley? Why wasn't there a schedule of income and expenses?

MR. BADGLEY: It must have been omitted. I -- we can certainly get that filed.

MS. SALLOUM: Yeah, we're going to need that. I'll send a follow-up email requesting that.

BY MS. SALLOUM:

Q Have you made any payments towards any of the financial judgments that were entered against you and Beyondscapes, pursuant to the lawsuits that were listed in your statement of financial affairs, Mr. Barnes?

A No.

Q The fact information sheet is a court-ordered, sworn financial disclosure after a financial judgment is entered. It's used to collect, for collection, and debtors are supposed to complete that within 45 days of the judgment.

Did you ever complete a fact information sheet and submit it to the creditors in any of the cases filed against you and Beyondscapes as listed in your statement of financial affairs at Line 9?

A I provided what I had at the time, yes.

Q To who?

A I think it was Mr. O'Hara's attorney.

Q Anyone else?

A No.

Q And you filed a complete fact information sheet?

A Of everything I had at the time, yes.

Q When was that?

A I can't recall by memory. A couple of years ago. Two to three.

Q Why was this case filed as primarily business debt when the characterization of the debt is majority consumer?

MS. SALLOUM: Mr. Badgley, do you know?

MR. BADGLEY: No, if we check that box, it would be because it's more than 50 percent business debt.

MS. SALLOUM: No, that's not the way it's characterized or demonstrated in the filing. You need to go back and take a look at that.

To the extent, even with the final -- the final judgments, this is way over consumer than non-consumer. He needs to file a Means Test.

MR. BADGLEY: Okay. Okay.

MS. SALLOUM: Either that or you need to demonstrate exactly how the business debt exceeds the consumer because it's not filed that way. And

we're going to need the payment advices and income and expense statements for both of the businesses for the six months prior to filing.

Ms. Patton, that's all the inquiry that we have now, but we need amendments. We need additional documents. If we're able to get those amendments, see them, review them, and the documents before any continued date, then we're happy to advise all parties. But at this point, we're going to request another continuance.

THE TRUSTEE: Okay. Let me look and see. Mr. Badgley, how much time do you need to get that done?

MR. BADGLEY: It's probably already ready, but I would say seven business days.

THE TRUSTEE: Okay. So my next continue day is May 29th. So that's two weeks from today. So that should be enough if you just need seven business days. So it's going to be May 29th at 11:00 o'clock.

I've got a 10:30, one that I think is going to have some time, so I'll give this one 529, 11:00 a.m.

So, Ms. Salloum, if you have a few more minutes, I'm going to let the creditors ask some questions. It looks like you have maybe 12 more

minutes you can give me.

MS. SALLOUM: I have. Thank you so much. Appreciate it.

THE TRUSTEE: Okay, so.

MR. BADGLEY: Ms. Patton?

THE TRUSTEE: Yes.

MR. BADGLEY: I have a conflict on the 29th at 11:00 o'clock. I have another 341 Meeting with a trustee in Tampa.

THE TRUSTEE: Okay.

MR. BADGLEY: Is it possible to get another day?

THE TRUSTEE: No. It's, I can give you a different time --

MR. BADGLEY: Okay.

THE TRUSTEE: -- on the 29th.

MR. BADGLEY: That would work. Um-hum.

THE TRUSTEE: 10:00 o'clock.

MR. BADGLEY: 10:00 o'clock works great.

MS. SALLOUM: Works for --

THE TRUSTEE: I've got two others on there, but I don't think they're going to take too long. Well --

MR. BADGLEY: Ms. Salloum, do you have -- do you wish for me to provide these documents directly, directly to you or just --

MS. SALLOUM: Yes, through the box. I'll send a link to a box.com account. You can upload the documents there.

MR. BADGLEY: Okay. And you have my email address?

MS. SALLOUM: I do.

MR. BADGLEY: Okay. Thank you.

MS. SALLOUM: Thank you.

THE TRUSTEE: Okay. So, Mr. O'Hara and Ms. Ellis want to ask questions. And, folks, I can budget about five minutes each for you right now. We are going to come back on May 29th at 10:00 o'clock. But I have time, so I'm going to give you each about five minutes right now to ask whatever questions you still have after you've heard the questions that Ms. Salloum and I have asked.

MR. O'HARA: Thank you. Thank you, Trustee Patton. Do you want me to go first or?

THE TRUSTEE: Yes, please.

MR. O'HARA: Yes, okay.

EXAMINATION

BY MR. O'HARA:

Q Mr. Barnes, on April the 3rd, 2024, you signed the Florida Form 1.977 Fact Information Sheet under oath in my state court collection case. In that sworn

statement, you represented that your business was closed, that you were currently not employed, that you had no checking or savings accounts, and you had no vehicles.

Two years later, in your bankruptcy schedules, signed under the same penalty of perjury, you disclosed a 2017 F-150 valued at 15,850, four bank accounts, household goods, electronics, three firearms, five chihuahuas, and a hundred percent ownership interest in Progreen Outdoors Improvements, LLC, a business that, according to your schedules, generated 55,400 in 2024 along.

How do you reconcile these two sworn statements?

A Can you repeat that? How do I reconcile them?

Q Yes. How do you reconcile these two statements; one, which you say you had nothing basically, and secondly, on your bankruptcy statement --

A There was --

Q -- you say you have a lot of assets.

A There was a time where my house was under foreclosure, and I did not have a job. I was in between jobs.

Q Okay. So both these statements were accurate at the time; is that correct?

A They were accurate at the time, yes.

Q Thank you.

Okay. On the same April the 2024 Form 1.977, all spouse-related questions were left marked or marked not applicable, suggesting either separation or no marital finance connection.

THE TRUSTEE: Mr. O'Hara --

BY MR. O'HARA:

Q Yet, your Schedule I lists your wife --

THE TRUSTEE: Mr. O'Hara, Mr. O'Hara.

MR. O'HARA: Yes.

THE TRUSTEE: I told you in the beginning, your questions need to be limited to finding assets for a bankruptcy estate.

MR. O'HARA: I understand. The first question, Ms. Patton --

THE TRUSTEE: Your first one was absolutely not designed to find that answer at all, and your second one is going down the same path. I am warning you, you have four minutes left that you can ask questions. Please pick the relevant questions.

MR. O'HARA: Okay. Let me try another one.

BY MR. O'HARA:

Q Let's see. In -- Mr. Poore -- Mr. Barnes, in mediation 2022, you signed a written settlement agreement in which you personally agreed to pay me 25,000 in

installments, in exchange for which I dismissed all claims against your wife, Daria Grigor, with prejudice.

At the time, which funds were actually available to you to make those payments, and what happened to those funds?

A The business was struggling before that, and we intended to pay everything but we just failed.

Q So when you signed the agreement, you had funds, but after you signed the agreement, you did not have funds; is that correct?

A I did not have $25,000. I think you agreed to a thousand a month, which was doable, but the business was suffering and couldn't pay.

Q So you actually paid none of that, correct?

A No, it was not paid, no.

Q Okay.

MR. O'HARA: I'm just looking through my questions, Trustee Patton, to see if there's anything that I can just check -- yes.

BY MR. O'HARA:

Q Can you clarify, Mr. Barnes, your income from Watson Civil Construction? Is that your current, your current activity and job?

A That's my current and only activity.

Q Okay. So is that your only income right now,

Mr. Barnes?

A It is my only income.

Q Okay. Thank you. And get income from Progreen at all?

A No, it is not active or doing any business. It hasn't been.

Q So your wife's income, is that part of your household income?

A It is, and every -- everything was provided, all the documents provided.

Q Okay. But your wife -- was it Dracaena, if I've said that correctly, that's not currently getting any income; is that correct?

A Not at the moment.

Q Okay.

MR. O'HARA: Okay. Let me just check if I have anything else. Okay. That's all the direct inquiry I have questions for now, I think, Trustee. Thank you.

THE TRUSTEE: Thank you. Ms. Ellis, what questions do you have? Same rules.

MS. ELLIS: Okay. Ms. Patton, most of my questions are going toward the fraud part of it.

THE TRUSTEE: Okay.

MS. ELLIS: I do have a couple of questions.

THE TRUSTEE: Okay. You have four minutes to ask them.

MS. ELLIS: All right.

EXAMINATION

BY MS. ELLIS:

Q Mr. Barnes, do you remember me?

A Vaguely.

Q And, do you keep files of all your clients and projects? Do you have files for all the communication, contracts, permits?

A We have most, most of the documentation, yes.

Q Did you review my file before today?

A No, I worked a night shift, 17 hours straight, and I'm here talking to you.

Q Okay.

MS. ELLIS: Ms. Patton, if I get off track, please let me know.

BY MS. ELLIS:

Q When we first met, you told me that Beyondscapes had installed many vinyl fences for commercial and residential projects both.

Can you tell me how many Beyondscapes actually installed?

THE TRUSTEE: Ma'am, that's outside of the scope of today's questioning.

MS. ELLIS: Okay. Ms. Patton, most of my questions are going to be due to fraud.

THE TRUSTEE: Okay.

MS. ELLIS: What about getting notice of the deposition meeting you were talking about?

THE TRUSTEE: Well, I'm not setting one up. If you want to set one up, then you might want to consider getting an attorney to help you do that. And I don't know if the UST is going to set one up or not.

So what I would suggest you do is, if you want, if you're not already getting electronic notice from the court of activity in this case, I would sign up for that. And then when the United States Trustee, if they decide to do a 2004 Exam, you would get notice at that point.

If you want to do your own, I would suggest you get an attorney to help you with that. That's a complicated process and thing.

MS. ELLIS: Okay.

THE TRUSTEE: Mm-hmm.

MS. ELLIS: Okay. And one more question for you. We intend to file a claim, from the complaint for fraud. Is -- do I need to get an attorney to do that or can I do that myself?

THE TRUSTEE: I have no idea. I've just met you. I don't know what you're capable of doing.

I always recommend getting an attorney to help somebody do something in bankruptcy because the hard part is you don't know what you don't know. And then if you blow a deadline or do something else because you didn't know, then sorry, you still blew a deadline. So I always recommend getting an attorney who knows what they're doing to help you. If you google creditors rights attorney in Orlando, you will find several really good ones.

MS. ELLIS: Okay. And also on this notice I got, is there something in this notice that tells me how to sign up for notices on this, on this document?

THE TRUSTEE: If you go to the court's website, if you just google Middle -- well, it's -- I'm in the wrong thing. Hold on.

MS. ELLIS: Okay.

THE TRUSTEE: I have that website actually up because we use it a lot for our work. WWWflm as in Mary, B as in bankruptcy, dot U.S. Courts, dot gov.

MS. ELLIS: Yes.

THE TRUSTEE: And there is a maroon banner

across the top, and I think if you went to electronic filing -- I'm looking at it real quick.

MS. ELLIS: Okay.

THE TRUSTEE: There's a section there called DEBN, Debtor Electronic Bankruptcy Noticing. I don't know if creditors use that as well or not, but the website is very dense, and that's not something that I normally need to go do, so I don't really know. But there's links all in there and there is a way to sign up to get electronic notice of activity in the case.

MS. ELLIS: Okay. Okay.

THE TRUSTEE: And so I would just recommend that you go spend some time on that website and play with the links until you get what you need.

Actually, no. On the outside, over to the right, there's a box called External Resources, and three links down is something called Electronic Bankruptcy Noticing. That's probably where you want to go.

MS. ELLIS: Okay.

THE TRUSTEE: Okay?

MS. ELLIS: Yes. Do I have -- do I have anymore minutes left?

THE TRUSTEE: No.

MS. ELLIS: Okay.

THE TRUSTEE: Ms. Salloum has a minute to get over to her other meeting.

MS. SALLOUM: Thank you.

THE TRUSTEE: And she's been very nice to give us every last second she can.

We do have this continued to May 29th at 10:00 o'clock. That is going to be in case the UST has more questions based on the documentation that Mr. Badgley is going to send to them.

You guys are welcome to come observe then, too. And if you come up with more questions that fit in my parameters, you are welcome to ask them at that time. Okay?

MS. ELLIS: Thank you. Thank you very much.

THE TRUSTEE: You're welcome. Everybody have a nice weekend.

MS. SALLOUM: Thank you. You, too. Bye bye.

MR. O'HARA: Thank you, Trustee.

(Thereupon, the Section 341 Meeting of Creditors was continued to May 29, 2026).

## C E R T I F I C A T E

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-styled matter.

*Cynthia D. Vachon* June 15, 2026

Cynthia D. Vachon

Notary Public-State of Florida

Commission Expires: 07/24/2026

Commission Number: HH291609

# ATTACHMENT B

Certified Transcript of the Meeting of Creditors (11 U.S.C. § 341)
Held May 29, 2026 (continued meeting)
In re Benjamin Tyler Poore-Barnes, Case No. 6:26-bk-02440-LVV

Prepared by Accredited Court Reporters
Pages 1–18
Reporter's certificate at page 18 (dated June 19, 2026)

Attached to Plaintiff's Notice of Filing Certified Transcripts of the Meetings of Creditors and of Corrections to the Complaint

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:26-bk-02440-LVV

IN RE:

BENJAMIN TYLER POORE-BARNES,

Debtor.

---

MAY 29, 2026

SECTION 341 MEETING OF CREDITORS

HELD VIA ZOOM/TELEPHONIC

A P P E A R A N C E S:

LORI PATTON, TRUSTEE
377 Maitland Avenue
Suite 1002
Altamonte Springs, Florida
Appearing as Chapter 7 Trustee

JEFFREY S. BADGLEY, ESQUIRE
Badgley Law Group
801 North Magnolia Avenue
Suite 304
Orlando, Florida

Proceedings recorded by electronic sound recording
Transcript provided by ACCREDITED COURT REPORTERS
acreporters@embarqmail.com
(407) 443-9289

APPEARANCES CONTINUED:

ILERAINE SALLOUM, PARALEGAL
Office of the United States Trustee
400 West Washington Street
Suite 1100
Orlando, Florida
Appearing on behalf of United States Trustee

ALSO PRESENT:

Sharon Ellis - Pro Se Creditor
Michael O'Hara - Pro Se Creditor

# I N D E X

TESTIMONY OF BENJAMIN TYLER POORE-BARNES:


Examination by the Trustee 5
Examination by Ms. Salloum 8
Examination by Ms. Ellis 12
Examination by Mr. O'Hara 13

CERTIFICATE OF REPORTER: 18

WORD INDEX: 19

P R O C E E D I N G S

THE TRUSTEE: Track 7 is Case Number 26-2440, Benjamin Tyler Poore-Barnes. And, appearance of Counsel.

MR. BADGLEY: Jeff Badgley for Mr. Poore-Barnes.

THE TRUSTEE: Thank you.

Sir, do you swear to tell the truth, the whole truth, and nothing but the truth?

MR. BARNES: Yes.

THE TRUSTEE: Thank you so much. And let me do other appearances before we get started. Ms. Salloum.

MS. SALLOUM: Ileraine Salloum for the U.S. Trustee.

THE TRUSTEE: Thank you.

MS. SALLOUM: Thank you.

THE TRUSTEE: Ms. Ellis.

MS. ELLIS: Sharon Ellis.

THE TRUSTEE: Okay. And you're a creditor and not an attorney, correct?

MS. ELLIS: Yes, ma'am.

THE TRUSTEE: Okay. And, Mr. O'Hara.

MR. O'HARA: Good morning. I'm a creditor pro se.

THE TRUSTEE: Okay. Thank you.

THEREUPON:

BENJAMIN TYLER POORE-BARNES

having been first duly sworn, was examined and testified as follows:

EXAMINATION

BY THE TRUSTEE:

Q All right. Mr. Barnes, I know I asked you other questions before, but just so we have a full record, I'm going to zoom through everything again real quick.

When you filed your bankruptcy petition --

THE TRUSTEE: Oh, for the record, I've reviewed driver's license and Social Security. They identify him and match the information on petition and schedules.

BY THE TRUSTEE:

Q When you filed your bankruptcy petition, did you read and understand everything before you signed it?

A Yes.

Q Does it list everything you own and everyone you owe money to?

A Yes.

Q Are there any changes or corrections you need to make at this time?

A Not to my knowledge, no.

Q Have you ever filed a bankruptcy before?
A 2014.
Q All right. Okay. Are you required to pay child support or alimony to anyone?
A No.
Q Did you read and understand the bankruptcy information sheet that describes the different chapters that are available before you filed your petition?
A Yes.
Q Do you own any real estate?
A No.
Q The personal property that you listed, is that a good list of everything you own and what you believe it's worth?
A That is correct, yes.
Q In the year before you filed your petition, did you give away, sell, or transfer any property out of your name?
A No.
Q In the year before you filed your petition, did you repay any friend or family member money you owed to them?
A No.
Q Do you have the right to sue anyone right now for any reason?

A No.
Q Do you expect an inheritance in the future?
A No.
Q Okay. And the taxes that I received, is that a good copy of what you filed with the IRS?
A Yes.
Q All right. And what are you doing for work now?
A I work for Watson Civil Construction, highway construction.
Q Okay. When I was reviewing for getting ready again for today, I found some other things that I wanted to ask about.
Did you, at any point, own a 2017 Chevy Colorado?
A Yes.
Q What happened to it?
A It was repossessed.
Q When was that?
A 2021, sometime in there.
Q Okay. What about a 2015 Civic?
A I never owned a Honda Civic.
Q Okay. What about a 2015 Ford Mustang?
A Never owned a Mustang.
Q Okay. Is there a reason why you think -- did

you know anybody who had those? Did you -- why that would show up on your asset report?

A The Honda Civic, I have no idea. I test drove a Mustang from a dealer and they printed a temporary tag for a week, but I didn't like the car and I took it back and that was like 2020.

Q Oh, wow. That stuck with you like a bad piece of glue, right?

A Yeah.

Q Okay. And I saw multiple uniform commercial code liens and it looks like maybe did you personally guarantee some business debt?

A Yes, I did.

Q Okay.

THE TRUSTEE: Ms. Salloum, I'm going to go ahead and let you ask your questions now.

MS. SALLOUM: Thank you, Ms. Patton.

EXAMINATION

BY MS. SALLOUM:

Q Mr. Poore-Barnes, you filed an amended statement of financial affairs a few days ago. It's Docket Number 13.

Did you have a chance to review that amendment and sign it under a Declaration of Penalty of Perjury before it was filed by your attorney?

A Yes.

Q And just yesterday you filed an Amended Schedule D, that's your secured debts, and an amended Schedule E/F, which are your unsecured debts. That's Docket Number 14.

Did you review those amendments and sign them under a Declaration of Penalty of Perjury before your attorney filed that?

A Yes, I reviewed them.

Q You listed a number of vehicle deficiencies on your Schedule E/F.

Did you have a commercial policy, vehicle policy insuring those vehicles?

A Yes, with Allstate --

Q Or are they -- or were they insured under your personal?

A They were insured through Allstate Commercial.

Q You testified previously that you have a hundred ownership interest in Progreen Outdoors Improvements, and you were operating that business in 2024 according to your tax return.

You also stated that you did business banking for the entity at SoFi Bank, but the only SoFi Bank account I received was a checking account ending in 1245 that's joint with you and your wife and the savings

account 4566.

So is that the account that you were using for Progreen or is it a different one?

A I believe that was a Novo account or something like that, but all the -- all the documents were provided for that.

Q I'm asking you, where did you do your banking for Progreen? You testified previously that it was SoFi.

A It might -- it might have been SoFi or Novo.

Q Is the Novo account that you were still -- is the Novo account that you were using for Progreen still open?

A No.

Q When did it close?

A Over a year or two ago. One to two years.

Q What was the last four digits of that, of that account?

A I don't recall the last four digits to my knowledge of that account.

Q Just to clarify, your testimony is that SoFi was not the bank you were using for Progreen, but that it was Novo?

A It might have been both.

Q And you don't know the last four digits of the SoFi account if it's not these joint accounts you have

with your wife?
A I don't know the last four digits of that account.
Q No amendment was filed to your Schedule I. So is it your testimony that the income that's on your Schedule I includes all of the income in your household, including the --
A Yes.
Q -- operation of any business?
A Yes.
Q And you included all sources of your income on Schedule I; is that correct?
A Correct. Yes.
Q There's a mobile check deposit into the SoFi checking account 1245. This was on December 19th, 2025. And it's just a mobile deposit in the amount of $703.50.
What would have been the source of that deposit?
A Probably a reimbursement from Watson Civil.
Q Do you typically get reimbursements?
A No, I don't.
Q So what would that reimbursement have been for?
A It would have been material or something I purchased for where I work and they reimbursed me.
Q What type of materials would that include?

A Actually, that was a Christmas bonus from Watson Civil.

Q Okay.

MS. SALLOUM: I have no further questions at this time.

THE TRUSTEE: Okay. Ms. Ellis, do you have questions?

And again, it needs to be limited to questions that would discover possible assets for the bankruptcy estate to administer.

MS. ELLIS: Yes, I just have one question.

THE TRUSTEE: Sure.

EXAMINATION

BY MS. ELLIS:

Q So, Mr. Barnes, I believe at the last meeting you said that your wife Daria had no involvement with Beyondscapes, but she was actually our main contact and her emails had the Beyonce -- sorry -- Beyondscape signature block on them.

So, was she on any of the bank accounts for Beyondscapes?

A No.

Q But she did -- she was a contact? She did --

A She did handle some emails.

Q I'm sorry?

A She would handle some emails.

Q Okay. A lot of emails.

THE TRUSTEE: Ma'am, do you have anymore questions that are designed to find assets for the bankruptcy estate?

MS. ELLIS: No.

THE TRUSTEE: Okay. Thank you. Mr. O'Hara, do you have questions?

MR. O'HARA: Yes.

THE TRUSTEE: Okay.

MR. O'HARA: Thank you, Trustee.

EXAMINATION

BY MR. O'HARA:

Q Mr. Poore-Barnes, your amended SOFA filed May --

THE TRUSTEE: Sir, you need to turn on your camera, please.

MR. O'HARA: I'm sorry. Can you hear me?

THE TRUSTEE: Can you turn on your camera if you're going to ask questions?

MR. O'HARA: Let me see. My video has stopped --

THE TRUSTEE: You got it.

MR. O'HARA: -- on my phone. Is it on now?

THE TRUSTEE: I see you. Okay. I just need --

MR. O'HARA: Okay.

THE TRUSTEE: We just need to see what you're -- no, now it's off.

MR. O'HARA: Let me go to the video screen.

THE TRUSTEE: There you are.

MR. O'HARA: Can you hear me? Can you hear me as well?

THE TRUSTEE: Go ahead and ask your questions.

MR. O'HARA: Okay.

BY MR. O'HARA:

Q Mr. Poore-Barnes, your amended SOFA filed May 26 shows no 2025 income. Schedule I shows 7,360 a month, Watson Civil for two years, roughly 88,000 in 2025 wages alone.

Where is your 2025 income and what account did it go to? And do you have documentation to back up this?

A All my tax returns for all years were provided.

Q What about the accounts it went to?

A SoFi. It's the only account I've had since I've worked here.

Q So SoFi is your only current account?

A Yes.

Q Okay.

And another question. You said the F-150 at the last creditor meeting was purchased around November.

Was that November 2023 or November 2025? Or 2024, excuse me.

A November 2025.

Q It was November 2025? Okay.

Your Schedule A/B lists four accounts; SoFi checking, SoFi savings, Middlesex, Federal, current.

Are these the only accounts in your name or for your benefit? Which of your -- Watson Civil account goes into your SoFi account, correct?

A Correct.

Q Okay.

So another question. In 2018, you worked on my property in Wedgefield with two skid steers; one tracked, one wheeled.

At the time, you told me that one was rented and one was owned by Beyondscapes. The owned skid steer is not on Schedule A or B. What happened to it? Was it sold or repossessed or transferred? And when, for how much, and to who?

A All equipment was leased or rented.

Q Leased or rented.

So another question. Your Schedule I reports your wife earns three -- 3,506 a month from Dracaena LLC. On May 15th, you testified Dracaena is not active and has no income. How do you reconcile these two statements?

A I have nothing to do with Dracaena. That is my wife's own company.
Q Nothing to do. Okay.
Another question. On May 15th, you said Progreen last had business three to four years ago. Progreen was formed January 25th, 2024, only 16 months ago.
When exactly did Progreen last generate revenue, and what account received those funds?
A It's probably been -- probably the first of 2024. Only one job and that was it.
Q When did you --(indiscernible).
A I started working my construction job right as that was filed.
MR. O'HARA: Thank you, Trustee. That's all the questions I have prepared for today.
THE TRUSTEE: All right. Does anybody else have any questions for this case?
MS. SALLOUM: No.
MS. ELLIS: No.
THE TRUSTEE: All right. I don't have any others, so I'm going to conclude the meeting. And everybody have a good weekend. Thank you.
MS. SALLOUM: Thank you, Ms. Patton.
MS. ELLIS: Thank you.

MR. O'HARA: Thank you.

THE TRUSTEE: Bye bye.

(Thereupon, the Section 341 Meeting of Creditors was concluded)

C E R T I F I C A T E

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-styled matter.

Cynthia D. Vachon ____________ June 19, 2026

Cynthia D. Vachon

Notary Public-State of Florida

Commission Expires: 07/24/2026

Commission Number: HH291609

James Michael O'Hara
19141 Sabal Street
Orlando, Florida 32833
407-608-2473 | pgadget@gmail.com

November 12, 2026

Clerk of Court
United States Bankruptcy Court, Middle District of Florida
George C. Young Federal Courthouse
400 West Washington Street, Suite 5100
Orlando, Florida 32801

Re: Filing in O'Hara v. Poore-Barnes, Adv. Pro. No. 6:26-ap-00111-LVV

Dear Clerk:

Enclosed for filing in the adversary proceeding is one document: Plaintiff's Notice of Filing Certified Transcripts of the Meetings of Creditors and of Corrections to the Complaint, four pages, with Attachments A and B attached (48 pages). The attachments are the certified transcripts of the meetings of creditors held on May 15 and May 29, 2026 in the main case, No. 6:26-bk-02440-LVV, each behind a cover sheet.

The Notice bears its own certificate of service. A copy has been served today by email on the Defendant's counsel, who consented in writing to service by email, and a copy has been sent to the Office of the United States Trustee. I appear pro se and file on paper. Thank you for your assistance.

Respectfully,

J Michael O'Hara

James Michael O'Hara, Plaintiff, pro se

Enclosure: Notice of Filing with Attachments A and B (52 pages)